## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| THOMAS VON RYBURN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No.  09-cv-1176 |
| ) | |
| ANTHONY RAMOS, *Warden*, ) | |
| ) | |
| Respondent. ) | |

## ORDER & OPINION

This matter is before the Court on Thomas Von Ryburn's ("Petitioner") "Motion to Alter or Amend the Court's Judgment of January 3rd of 2014" pursuant to Rule 59(e) of the Federal Rules of Civil Procedure (Doc. 66). For the reasons stated below, the Motion is denied.

### BACKGROUND

On January 3, 2014, this Court entered an Order and Opinion denying Petitioner's Rule 60(b)(6) Motion For Relief Of Judgment. (Doc. 63). Originally, this Court granted a motion to dismiss Petitioner's § 2254 habeas petition (Doc. 24) in an Order and Opinion (Doc. 37) dated June 23, 2010. The Court dismissed the petition because it was untimely under 28 U.S.C. § 2244(d). The Court also found that neither statutory tolling provided in § 2244(d)(1)(B), (C), or (D), nor equitable tolling of the statute of limitations was applicable. (Doc. 37 at 21). One of the four grounds asserted in the habeas petition was a bare-bones claim of actual innocence. (Doc. 1 at 11).  Petitioner also cursorily raised the issue of actual innocence in

response to the motion to dismiss his petition in other written submissions to the Court. (*See*, *e.g.*, Doc. 28 and 29).

The Court declined to consider the actual innocence defense to the motion to dismiss the habeas petition because of *Escamilla v. Jungwirth*, 426 F.3d 868, 871-72 (7th Cir. 2005), in which the Seventh Circuit held that claims of actual innocence alone did not allow petitioners to circumvent the statute of limitations found at 28 U.S.C. § 2244(d)(1). On May 28, 2013, the United States Supreme Court decided *McQuiggin v. Perkins*, ---U.S.---, 133 S. Ct. 1924 (2013), in which the court held that in extremely rare circumstances, an actual innocence claim can overcome 28 U.S.C. § 2244(d)(1)'s one year statute of limitations. This Court found that while *McQuiggin* abrogated *Escamilla*, it was not extraordinary and could not justify vacating this Court's June 2, 2010 Order and Opinion (Doc. 37). (Doc. 65 at 6). The Court explicitly stated that its finding that the *McQuiggin* decision did not constitute an extraordinary circumstance that would justify relief under Rule 60(b)(6) was sufficient in and of itself to deny Petitioner's Rule 60(b)(6) motion. (*Id.*).

Despite that, the Court went on to explain how Petitioner's actual innocence claim was unsupported and failed. (Doc. 65 at 7-9). The Court explained how Petitioner's evidence was neither <u>new</u> nor <u>reliable</u> as those terms are explained by such cases as *Schlup v. Delo*, 513 U.S. 298 (1995), *House v. Bell*, 547 U.S. 518 (2006), and *Bousley v. United States*, 523 U.S. 614, 624 (1998). First, the Court noted that Petitioner pleaded guilty to the offense that he challenged in his habeas petition and even attached a signed copy of his plea agreement. (Doc. 65 at 7).

Pleading guilty to the offense is not an absolute bar to an actual innocence claim, *Bousley*, 523 U.S. at 623-24, but it is certainly weighty evidence that he actually committed the crimes to which he pled. The Court pointed out that Petitioner should have attached the transcript of the plea hearing to attack the presumption that his plea was false or constitutionally infirm. (*See* Doc. 65 at 7).

Second, Petitioner offered a garage receipt to show his car was being repaired at a shop the morning of the rape but he never explained, and still has not explained, why he did not have access to this information before. In order to show actual innocence, a petitioner must point to <u>new</u>, <u>reliable</u> evidence that makes it "more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *House*, 547 U.S. at 536 quoting *Schlup*, 513 U.S. at 327. His other evidence, a transcript of an interview of a potential alibi witness was similarly unhelpful and not new. (Doc. 65 at 8).

## LEGAL STANDARDS

An order denying a motion made under Rule 60 of the Federal Rules of Civil Procedure is deemed a "judgment" for purposes of Rule 59(e). *Bank of California, N.A. v. Arthur Andersen & Co.*, 709 F.2d 1174, 1176 (7th Cir. 1983). A motion to alter or amend judgment filed pursuant to Rule 59(e) may only be granted if a movant clearly establishes that the court made a manifest error of law or fact, or presents newly discovered evidence. *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995). A manifest error is the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins.*

*Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal quotation marks omitted). A movant may not advance in a Rule 59(e) motion arguments he should have raised before judgment was entered. *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 512 (7th Cir. 2007).

## DISCUSSION

Petitioner's motion fails because he has neither identified a manifest error of law or fact purportedly made by this Court nor has he presented newly discovered evidence. *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995). Petitioner fails to even address in his Rule 59(e) motion the primary reason the Court denied his Rule 60(b)(6) motion, which was that legal developments occurring after a judgment becomes final are not considered "extraordinary circumstances" that justify relief under Rule 60(b)(6). *Gonzalez v. Crosby*, 545 U.S. 524, 537 (2005); *Hill v. Rios*, 722 F.3d 937, 938 (7th Cir. 2013) (explaining that "legal developments after a judgment becomes final do not qualify as extraordinary").

Petitioner claims the Court erred by not mentioning investigation notes of his attorney that show she interviewed people who could provide Petitioner with an alibi defense. The Petitioner does not argue that these notes are "newly discovered" under Rule 59(e) or "new" under Rule 60(b)(6). The notes show some witnesses could have placed Petitioner at a garage *around* 8:00 am on the day of the rape. (Doc. 66-1 at 12). This is important for the Petitioner because the victim stated at his sentencing hearing that she was raped "around eight, I believe." (Doc. 66-1 at 16).

This evidence regarding the victim's and witnesses' memories of the exact times they encountered Petitioner hardly establishes actual innocence in light of the fact that Petitioner pled guilty to the rape and <u>apologized</u> for his actions at the sentencing hearing.

Petitioner opines that by attaching the transcripts of the hearings, the Court will reconsider its ruling. The Court will not reconsider its holding because any error in not attaching the transcripts was Petitioner's and certainly not the Court's. In any event, Petitioner has now submitted transcripts of his plea hearing and sentencing hearing. Although review of these documents was not warranted under Rule 59(e) in light of Petitioner's failure to identify error in the Court's conclusion that legal developments occurring after a judgment becomes final are not considered "extraordinary circumstances" that justify relief under Rule 60(b)(6), the Court nonetheless has read them in the interests of completeness. After reviewing the transcripts of the plea and sentencing hearings, the Court is all the more convinced that Petitioner's plea was intelligent and he cannot establish that he is actually innocent of sexually assaulting the victim such that his late habeas petition is excusable.

The court who took Petitioner's plea took an extraordinary amount of time detailing every element of Petitioner's plea agreement with him. (Doc. 66-1 at 32-61). The Court explained the charges to Petitioner, took breaks for him to discuss with his counsel (Doc. 66-1 at 45 and 46), and had the following notable exchanges with the Petitioner:

> **The Court**: Okay. Did you read this agreement and talk it over with your lawyer before you signed it?
>
> **The Defendant**: Yeah.
>
> **The Court**: I'm going to go through this with you. If at anytime I say something you don't understand, I want you to stop me and I'll explain it, is that agreed?
>
> **The Defendant**: Sure.

(Doc. 66-1 at 33). The agreement was then discussed in open court. Thereafter the Court asked Petitioner, "Okay. Is that your agreement, Mr. Ryburn?" The Petitioner replied, "Yes, it is." (Doc. 66-1 at 35). After the Petitioner expressed some inability to grasp what the agreement meant, the Court stated: "Well, let's – let's go back through this one sentence at a time then, okay?" (Doc. 66-1 at 36). And the Court did so. Finally, the following exchange at the plea hearing clearly demonstrates Petitioner was aware and willingly pled to the charged offenses:

> **The Court:** Let me then ask you, as to these three charges of aggravated criminal sexual assault, I'm going to ask you what your plea would be. Your options are to either plead guilty under the agreement or not guilty and have a trial. That's your choices. You can either plead guilty under this agreement or you can plead not guilty, and we'll continue on and have a trial in your case. Do you understand what your options are?
>
> **The Defendant:** M-hm. Yeah, I do.
>
> **The Court:** Okay. Understanding those options, then, with regard to the, to these three counts of aggravated criminal sexual assault, counts two, three, and four, how do you wish to plead, guilty or not guilty?
>
> **The Defendant:** Oh, guilty.
>
> **The Court:** Do you have any questions about that?
>
> **The Defendant:** None that I can think of right now.

> **The Court:** All right. Court will find a knowing, voluntary, knowing, voluntary and understanding plea of guilty to the charges with a factual basis.

(Doc. 66-1 at 59-60).

Moreover, any serious contention that Petitioner was actually innocent of raping the victim is belied by his apology for his actions. The Petitioner stated the following in open court at his sentencing hearing: "What happened, it was terrible. Its just as terrible for me as it is, was for her, and I can't ever pay her back for what has happened, but I can't believe it happened myself". (Doc 66-1 at 80). It is highly unlikely that an innocent defendant would acknowledge what happened was terrible and that he could never repay the victim for what he did, even if he were pleading to the crime for some reason other than actually having committed it.

The clear import of Petitioner's argument in his habeas petition and motions is that he was unable to participate in his hearings intelligently because of his medications and history of poor memory. (*See e.g.*, Doc. 37 at 4). First, Petitioner was found fit to stand trial. (Doc. 66-1 at 18-22). Second, the transcript reveals Petitioner was intelligent in that he was aware and alert enough to participate in his plea and sentencing hearing. As an example, Petitioner was able to remember that the only physical evidence against him of which he was aware was semen. (Doc. 66-1 at 14). The Petitioner asserts that he is factually innocent of the crime. So apparently Petitioner would like this Court to believe he could remember what evidence existed against him and what witnesses knew where he was at the exact times on the day of the crime but he was not capable of remembering at the plea

hearing that he did not rape the victim, such that his plea of guilt was false. The Petitioner's arguments are illogical and without merit.

Lastly, Petitioner used five of the twelve pages of his Rule 59(e) motion raising ineffective assistance of counsel claims that he either brought or should have brought in his underlying habeas petition. (Doc. 66 at 7-12). This is clearly improper. First, a movant may not advance in a Rule 59(e) motion arguments he should have raised before judgment was entered. *Sigsworth*, 487 F.3d at 512. Second, a motion for relief of judgment or to alter or amend final judgment of dismissal that simply challenges the underlying state court conviction is nothing more than a disguised successive habeas petition, for which the district court has no authority to adjudicate under the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2244(b). *Dunlap v. Litscher*, 301 F.3d 873, 875-76 (7th Cir. 2002). By including the ineffective assistance of counsel claims in his Rule 59(e) motion, Petitioner is trying to improperly take another bite at the apple and challenge his underlying state conviction. Therefore, to the extent the motion requests the Court to reconsider ineffective assistance of counsel claims, it must be dismissed.

## CONCLUSION

For the reasons stated above, Petitioner has neither demonstrated that this Court made a manifest error of law or fact in its January 3, 2014 Order and Opinion (Doc. 65); nor has he presented newly discovered evidence. Therefore, Petitioner's Motion To Alter Or Amend Judgment (Doc. 66) is DENIED in part. To the extent

the same motion requested the Court to reconsider ineffective assistance of counsel claims, it is DISMISSED in part. IT IS SO ORDERED.

CASE TERMINATED.

Entered this 28th day of February, 2014.

s/ Joe B. McDade
JOE BILLY  McDADE
United States Senior District Judge
